1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HANTZ SOFTWARE, LLC,

Plaintiff,

v.

SAGE INTACCT, INC.,

Defendant.

Case No.  21-cv-01987-HSG

**ORDER GRANTING MOTION TO DISMISS AND DENYING AS FUTILE MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Re: Dkt. Nos. 47, 56

Before the Court is Defendant Sage Intacct, Inc.'s motion to dismiss Plaintiff Hantz Software, LLC's complaint, for which briefing is complete.  *See* Dkt. Nos. 47 ("Mot."), 50 ("Opp."), 51 ("Reply").  The Court heard oral argument on the motion on October 14, 2021.  *See* Dkt. No. 55.  For the reasons explained below, the Court GRANTS Defendant's motion to dismiss.

**I.    BACKGROUND**

On March 22, 2021, Plaintiff Hantz Software, LLC brought this patent infringement action against Defendant Sage Intacct, Inc.  *See* Dkt. No. 1.  The operative complaint asserts infringement of United States Patent Nos. 8,055,559 ("the '599 Patent") and 8,055,560 ("the '560 Patent") (collectively, "the Asserted Patents").  Dkt. No. 41 ("Compl.") ¶ 1.  The Asserted Patents relate to computer-implemented accounting methods or systems for accounts receivable and accounts payable within a multi-company system.  *See id.*

The operative complaint recites allegations that "[p]rior to the inventions claimed in the [Asserted Patents], conventional approaches to financial accounting methods and solutions for multi-company enterprises were far too time consuming and inefficient, especially where accurate and complete multi-company accounting results were required."  *Id*. ¶ 17.  The "operational

United States District Court
Northern District of California

1    inefficiencies and delays" in performing these "conventional" approaches created a "long felt need

2    in the marketplace" for patented, computer-implemented methods that "enhance[d] and

3    streamline[d]" the approaches. *Id.* ¶¶ 18-20.  To solve this problem, beginning in 2006, Roy

4    Gelerman reviewed the existing landscape of multi-company accounting platforms, including

5    those offered by Defendant. *Id.* ¶¶ 22, 23, 25, 26.  During a February 2008 demonstration of

6    Defendant's multi-company accounting product, Mr. Gelerman identified the products'

7    shortcomings in accuracy, speed, and completeness. *Id.* ¶ 27.  At this demonstration, Defendant

8    personnel confirmed to Mr. Gelerman "that the [Defendant's] accounting products did not include

9    features and functions capable of creating an [accounts receivable invoice or accounts payable

10   bill] with detail lines from multiple companies." *Id.* ¶ 28.  Defendant personnel believed "that

11   would be too hard." *Id.*  After his competitive research, Mr. Gelerman confirmed that:

12          none of the commercially available accounting products included the
            functions and features that allow a payment for a multi-company AP
13          bill, or AR invoice, to be recorded in the accounting system to reduce
            the outstanding AP or AR balances of each company and the system
14          automatically adds a pair of multi-company generated "Due To/Due
            From" lines as "Due To/Due From" entries to balance the money
15          owed between the distinct companies" [sic] and to keep each
            companies' balance sheet in balance.
16

17   *Id.* ¶ 30.  Plaintiff and Mr. Gelerman then sought patent protection for a solution incorporating Mr.

18   Gelerman's findings and drafted the patent applications that would issue as the '559 and '560

19   Patents. *Id.* ¶ 32.

20          The '559 Patent and the '560 Patent are related and claim priority to the same parent

21   application.  The two patents share near identical titles. *Compare* '559 Patent ("Multi-Company

22   Business Accounting System And Method For Same Including Account *Receivable*" (emphasis

23   added)) *with* '560 Patent ("Multi-Company Business Accounting System And Method For Same

24   Including Account *Payable*" (emphasis added)).  While the '559 Patent refers to "invoices" for

25   accounts receivable and the '560 Patent refers to "vouchers" for accounts payable, both patents

26   share substantially the same written description.  The patents' specifications identify problems in

27   multi-company business accounting systems that record and organize company financial activity.

28   "The existing accounting systems force the accountant to manually enter the inter-company 'Due

1   To/Due From' entries to keep each company in balance." *See, e.g.*, '559 Patent, 2:14-16.  "This is

2   a huge burden, as nearly 30% of the accounting entries are inter-company balancing entries."  *Id.*

3   at 2:16-18.  To remedy this gap, the Asserted Patents use "balancing lines" to "automatically add"

4   "input invoice detail lines" and "define an outstanding balance associated with each of the distinct

5   companies."  *Id.* at 2:46-50.  This claimed invention allows the user to "accurately report the

6   Accounts Receivable for each of the distinct companies," "provid[ing] results that were not

7   possible in conventional methods and systems."  Opp. at 9.

8           The '559 Patent and the '560 Patent each have four independent claims:  claims 1, 31, 32,

9   and 33.  Claim 1 of the '559 Patent recites:

10              1. A computer implemented method for Account Receivable (AR)
                accounting for use within a multi-company accounting system that
11              operates on a computer arrangement and which is accessible by one
                or more persons defining an interface user, the method comprising:
12              at a processor, creating a multi-company invoice with the multi-
                company accounting system, the interface user entering financial data
13              into the multi-company accounting system via the computer
                arrangement including:
14              entering an invoice total money amount; and
                entering input invoice detail lines, each of the input invoice detail
15              lines having an entered account associated with one of a plurality of
                companies of a multi-company group and an amount of money, at
16              least two of the input invoice detail lines being associated with two
                distinct companies of the multi-company group, wherein the distinct
17              companies are affiliated with each other and wherein each uses the
                multi-company accounting system for tracking money flow and
18              balancing balance sheets for their respective accounting operations;
                at the processor, automatically adding via the multi-company
19              accounting system at least a pair of multi-company generated
                balancing lines associated with the multi-company invoice for
20              balancing money owed to each of the distinct companies to define an
                outstanding balance associated with each of the distinct companies,
21              thereby keeping Accounts Receivable for each of the distinct
                companies in balance;
22              at the processor, entering a payment for paying the multi-company
                invoice including the interface user entering an amount of the
23              payment into the multi-company accounting system via the computer
                arrangement; and
24              at the processor, applying the payment to the multi-company invoice
                to reduce the outstanding balances for the distinct companies
25              including the multi-company accounting system automatically adding
                at least a pair of multi-company generated Due To/Due From lines as
26              Due To/Due From entries to balance the money owed between the
                distinct companies, thereby keeping the Accounts Receivable for each
27              of the distinct companies in balance.

28   '559 Patent, 49:2-43.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Claim 31 of the '559 Patent recites:

2        31. A multi-company accounting system for providing a computer
3        implemented method for Account Receivable (AR) accounting and
         which is accessible by one or more persons defining an interface user,
         the system comprising:
4        a computer arrangement including at least one processor operative to:
         create a multi-company invoice within the multi-company accounting
5        system, wherein the interface user enters financial data into the multi-
         company accounting system via the computer arrangement including:
6        enters an invoice total money amount; and
         enters input invoice detail lines, each of the input invoice detail lines
7        having an entered account associated with one of a plurality of
         companies of a multi-company group and an amount of money, at
8        least two of the input invoice detail lines being associated with two
         distinct companies of the multi-company group, wherein the distinct
9        companies are affiliated with each other and wherein each uses the
         multi-company accounting system for tracking money flow and
10       balancing balance sheets for their respective accounting operations;
         automatically add at least a pair of multi-company generated
11       balancing lines associated with the multi-company invoice for
         balancing money owed to each of the distinct companies to define an
12       outstanding balance associated with each of the distinct companies,
         thereby keeping Accounts Receivable for each of the distinct
13       companies in balance;
         enter a payment for paying the multi-company invoice including the
14       interface user entering an amount of the payment into the multi-
         company accounting system via the computer arrangement; and
15       apply the payment to the multi-company invoice to reduce the
         outstanding balances for the distinct companies including the multi-
16       company accounting system automatically adding at least a pair of
         multi-company generated Due To/Due From lines as Due To/Due
17       From entries to balance the money owed between the distinct
         companies, thereby keeping the Accounts Receivable for each of the
18       distinct companies in balance.

19   '559 Patent, 54:39-55:12.  Claim 32 similarly recites a process for using balancing lines to define

20   an outstanding balance associated with each distinct company in a multi-company business, but

21   does so as a computer-implemented method claim. *Id.* at 55:13-56:4.  Claim 33 does the same, but

22   instead as a computer-readable storage medium claim. *Id.* at 56:5-46.

23       On July 8, 2021, Defendant moved to dismiss the Complaint because the asserted claims

24   are invalid as a matter of law under Section 101.  Defendant seeks a declaration that the patents-in-

25   suit are invalid.

26   //

27   //

28   //

4

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) ("Indefiniteness is a question of law that we review de novo . . . subject to a determination of underlying facts.").  Claim construction is not required prior to a ruling on Defendant's motion.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming grant of dispositive motion prior to claim construction); *accord Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-20 (Fed. Cir. 2014).

### B.   Section 101 Patent-Eligible Subject Matter

Section 101 of the Patent Act describes the scope of patentable subject matter as encompassing "any new and useful process, machine, manufacture, or composition of matter, or

United States District Court
Northern District of California

1    any new and useful improvement thereof." 35 U.S.C. § 101.  It is well settled that "laws of nature,

2    natural phenomena, and abstract ideas are not patentable." *See Alice Corp. Pty. v. CLS Bank Int'l*,

3    573 U.S. 208, 216 (2014).  These categories are not patent-eligible because "they are the basic

4    tools of scientific and technological work," which are "free to all men and reserved exclusively to

5    none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012) (citations

6    omitted).  Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would

7    "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary

8    object of the patent laws.  *Id.*  However, the Supreme Court has also recognized the need to "tread

9    carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573

10   U.S. at 217.

11          The Supreme Court and Federal Circuit have articulated a two-part test for determining

12   whether a claim's subject matter is patent-eligible.  First, the Court "determine[s] whether a claim

13   is 'directed to' a patent-ineligible abstract idea." *Content Extraction*, 776 F.3d at 1346-47

14   (citation omitted).  If so, the Court then "consider[s] the elements of the claim—both individually

15   and as an ordered combination—to assess whether the additional elements transform the nature of

16   the claim into a patent-eligible application of the abstract idea." *Id.* at 1347.  "This is the search

17   for an 'inventive concept'—something sufficient to ensure that the claim amounts to 'significantly

18   more' than the abstract idea itself." *Id.* (quotation omitted).

19          In its analysis, the Court "examine[s] earlier cases in which a similar or parallel descriptive

20   nature can be seen—what prior cases were about, and which way they were decided." *Amdocs*

21   *(Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).  The question of

22   eligibility may be determined at the pleadings stage "only when there are no factual allegations

23   that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software,*

24   *Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

25   **III.    ANALYSIS**

26          Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6), arguing that the

27   Asserted Patents fail at both steps of the *Alice* inquiry.  *See generally* Mot.  At step one, Defendant

28   contends that the Asserted Patents are directed to the basic and abstract concept of "using

United States District Court
Northern District of California

1   'balancing lines' to reconcile accounts receivable ('559 patent) or accounts payable ('560 patent)

2   across related companies." *Id.* at 16-17.  At step two, Defendant argues that the Asserted Patents

3   fail to recite a saving inventive concept that transforms the claimed method into a patentable

4   application of the abstract idea.  *See id.* at 24-29.  Plaintiff counters that Defendant oversimplifies

5   the Asserted Patents by analyzing the claims individually and not as a whole.  *See* Opp. at 13-22.

6   The Court proceeds under the two-part test outlined in *Alice*.[1]

7       **A.   *Alice* Step One**

8       The Court finds that the Asserted Patents are directed to an abstract idea:  improving

9   financial recordkeeping for multi-company businesses via balancing lines.  The claimed method

10  recites steps to gather and enter financial data, and organize that data using mathematical

11  calculations.  The Court finds no meaningful distinction between this type of financial economic

12  practice and "the concept of intermediated settlement" held to be abstract in *Alice*, 573 U.S. at

13  219, or the "basic concept of hedging" held to be abstract in *Bilski v. Kappos*, 561 U.S. 593, 611

14  (2010).

15      The Federal Circuit treats the "collecti[on of] information, including when limited to

16  particular content (which does not change its character as information), as within the realm of

17  abstract ideas." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  It

18  further "recognize[s] that merely presenting the results of abstract processes of collecting and

19  analyzing information, without more (such as identifying a particular tool for presentation), is

20  abstract as an ancillary part of such collection and analysis." *Id.* at 1354.  The asserted claims are

21  directed precisely to what the Federal Circuit has held to be an abstract idea.  "The advance they

22  purport to make is a process of gathering and analyzing [financial transaction] information [], then

23

24  [1] Defendant argues that "the difference among the independent claims is formal" and that no
25  "minor distinctions in phrasing or claiming affect patent-eligibility." Mot. at 30.  Defendant
    contends that Plaintiff's "independent claims should rise or fall together." *Id.*  While Plaintiff
    disputes Defendant's characterization, Plaintiff submits independent claims 1 and 31 of either
26  patent as representative of the claimed method.  Opp. at 11.  The Court agrees with Defendant that
    the differences among the independent claims in either Asserted Patent do not affect the patent-
27  eligibility of the claimed invention.  It finds independent claims 1 and 31 of the '559 Patent
    representative of the claimed invention and concludes that it can properly rely on these claims in
28  assessing the patentee's invention. *See Intell. Ventures I LLC*, 850 F.3d at 1332 n.7.

United States District Court
Northern District of California

1    displaying the results, and not any particular assertedly inventive technology for performing those

2    functions." *Id.* "The claims thus fit squarely within the line of precedent that . . . classifies data

3    collection, organization, and analysis as abstract—even where that produces new data—in the

4    absence of a claimed technological improvement." *Software Rts. Archive, LLC v. Facebook, Inc.*,

5    485 F. Supp. 3d 1096, 1105 (N.D. Cal. 2020) (quotation omitted) (collecting cases).

6            When analyzing whether a claim is directed to an abstract idea, some courts ask whether

7    the claims' steps "can be performed in the human mind, or by a human using a pen and paper."

8    *OpenTV, Inc. v. Apple, Inc.*, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (quoting

9    *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *Brightedge*

10   *Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 866 & n.6 (N.D. Cal. 2018).

11   Defendant argues that "the claims' steps of adding balancing lines (and utilizing them to create

12   related 'Due To/Due From' entries) could be equally performed in a pen-and-paper environment

13   as in an automated one." Mot. at 19.  Plaintiff responds that "humans cannot perform the specific

14   features of the Claims" "because of the complicated recording of financial activity that must occur

15   when a partial (i.e., short) payment is received for an AR Invoice, or when an AP check is issued

16   to pay an AP bill, or when a credit memo is issued." Opp. at 22.  The Court finds Plaintiff's

17   argument unpersuasive.  Financial transactions like partial payments, use of a check as payment,

18   or issuance of a credit memo are all types of financial activity that were recorded and analyzed

19   long before computers existed.  With pen and paper, a person could record invoice inter-company

20   "Due To/Due From" entries onto a balance sheet (step 1), add the entries associated with each

21   company (step 2), and total the amounts owed among the distinct companies (step 3).  The fact

22   that the claims of the Asserted Patents can be accomplished without modern technology is

23   indicative that they "are the types of methods that embody the basic tools of scientific and

24   technological work that are free to all men and reserved exclusively to none, and therefore

25   comprise a non-patent-eligible abstract idea." *OpenTV, Inc.*, 2015 WL 1535328, at *4 (quotation

26   marks omitted).

27           Defendant argues that the claimed invention is directed to an abstract idea because the

28   Asserted Patents' "focus . . . is not on [the] improvement in computers as tools, but on certain

independently abstract ideas that use computers as tools." Mot. at 23. The Court agrees. The

"mere automation of manual processes using generic computers does not constitute a patentable

improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d

1044, 1055 (Fed. Cir. 2017); *see also Elec. Power Grp.*, 830 F.3d at 1354 (finding claims directed

to abstract idea where "focus . . . is not on such an improvement in computers as tools, but on

certain independently abstract ideas that use computers as tools"); *OIP Techs., Inc. v.*

*Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("At best, the claims describe the

automation of the fundamental economic concept of offer-based price optimization through the

use of generic-computer functions."). Claims 1 and 31 invoke computer technology to store and

organize financial transactions across multiple companies in a single business. This is not an

improvement to computer technology or computer capabilities. Plaintiff submits that the Asserted

Patents purportedly address the problem of "accurately and always reporting the actual current

status of each entity's accounts receivable and accounts payables of a multi-entity organization."

Opp. at 17. But this is not a technical issue. Inaccurate and inefficient accounting systems predate

the invention of the computer. The claimed advance does not amount to an improvement in

computer technology: the invention neither addresses a problem unique to computer technology

nor announces an improvement in computer operation.

For the above reasons, the Court finds that the Asserted Patents are directed to an abstract

idea at *Alice*'s first step.

### B.    *Alice* Step Two

The Court next considers "whether the claimed elements—'individually or as an ordered

combination'—recite an inventive concept." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306,

1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217). To constitute an inventive concept, the

claim limitations must "involve more than performance of well-understood, routine, [and]

conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128 (quotation

omitted). "Whether a combination of claim limitations supplies an inventive concept that renders

a claim 'significantly more' than an abstract idea to which it is directed is a question of law." *BSG*

*Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). However, "whether a claim

United States District Court
Northern District of California

United States District Court
Northern District of California

1    limitation or combination of limitations is well-understood, routine, and conventional is a factual

2    question," and the Court must take as true Plaintiff's factual allegations at this stage. *Id.* Still,

3    Plaintiff must include "plausible and specific factual allegations that aspects of the claims are

4    inventive." *Cellspin*, 927 F.3d at 1317. "Any allegation about inventiveness, wholly divorced

5    from the claims or the specification," will not defeat a motion to dismiss. *Id.*

6         Claims 1 and 31 generally claim a method for accomplishing an abstract idea through

7    conventional computer functions:  entering invoice amounts, adding up the invoice amounts, and

8    displaying outstanding balances.  These steps recite "basic functions of a computer" and set forth a

9    result-focused and functional method.  They do not impart an inventive concept. *Alice*, 573 U.S.

10   at 225.

11        Courts have consistently held that patents that merely set forth a "conventional process for

12   collecting and analyzing information via a mathematical process" do not impart an inventive

13   concept. *See, e.g.*, *Brightedge Techs., Inc.*, 304 F. Supp. 3d at 872 (holding that a method for

14   assessing website entities' marketing efforts by calculating and displaying specific numerical

15   scores "d[oes] not impart an inventive concept"); *Intell. Ventures I LLC v. Erie Indem. Co.*, 850

16   F.3d 1315, 1328 (Fed. Cir. 2017) (concluding that a method to create an index-searchable database

17   defined by "a plurality of XML tags" failed to impart an inventive concept).  Similarly, the

18   Asserted Patents use computer balancing lines to balance the accounts payable and accounts

19   receivable of multiple companies in a single business.  At its core, the invention is nothing more

20   than an abstract idea:  the collection and organization of financial data.  This does not establish

21   any inventive concept.

22        Plaintiff confuses inventive concept with novelty, which does not necessarily transform an

23   abstract idea into a patentable one. *See, e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161,

24   1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are groundbreaking,

25   innovative, or even brilliant, but that is not enough for eligibility."); *Ultramercial, Inc.*, 772 F.3d

26   at 715 ("We do not agree . . . that the addition of merely novel or non-routine components to the

27   claimed idea necessarily turns an abstraction into something concrete.").  The operative complaint

28   sets out a series of allegations claiming that the Asserted Patents solved accuracy and reliability

1    problems inherent in the existing multi-company accounting platform landscape.  However,

2    "[t]hese benefits amount to nothing more than improved efficiency, not an inventive concept."

3    *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 2021 WL 2531069, at *6 (N.D. Cal. June 21, 2021).  "An

4    improved result, without more stated in the claim, is not enough to confer eligibility to an

5    otherwise abstract idea."  *Id.* (quotation omitted).

6              Plaintiff attempts to analogize the Asserted Patents to the patent at issue in *DDR Holdings,*

7    *LLC v. Hotels.com, L.P*.  773 F.3d 1245, 1257 (Fed. Cir. 2014).  But *DDR Holdings* is readily

8    distinguishable.  The patent in *DDR Holdings* was directed to the technical problem of how to

9    retain website visitors who clicked on links to third-party advertisements.  *Id.* at 1257.  The patent

10   used an "outsource provider" to incorporate the "look and feel" elements from the host website

11   and provide visitors with the opportunity to purchase products from the third-party merchant

12   without actually entering that merchant's website.  *Id.* at 1258.  The Federal Circuit found that the

13   claimed solution was "necessarily rooted in computer technology in order to overcome a problem

14   specifically arising in the realm of computer networks."  *Id.* at 1257.  It held that although "the

15   claims involve both a computer and the Internet," "these claims stand apart because they do not

16   merely recite the performance of some business practice known from the pre-Internet world along

17   with the requirement to perform it on the Internet."  *Id.*

18             Applying the reasoning in *DDR Holdings*, Plaintiff argues that the Asserted Patents

19   address the "technical problem" that "conventional accounting systems do not provide a method

20   for 'keeping Accounts Payable [or Accounts Receivable] for each of the distinct companies in

21   balance.'"  Opp. at 20.  In contrast to *DDR Holdings*, Plaintiff's "technical problem" is not, in fact,

22   a technical one.  As explained above, the longstanding problem of maintaining "accounts payable

23   or accounts receivable for each of the distinct companies in balance" can be performed with pen

24   and paper.  Plaintiff's analogy fails to demonstrate that the Asserted Patents contain an inventive

25   concept; instead, it highlights the Asserted Patents' lack of an inventive concept and shows that

26   the patents simply describe execution of an abstract idea using a computer.

27             Plaintiff further argues that when considered "as an ordered combination," the claims of

28   the Asserted Patents contain an inventive concept.  In support, it asks the Court to analogize the

United States District Court
Northern District of California

11

1    claims to *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir.

2    2016).  However, the comparison of Claims 1 and 31 against the ones at issue in *BASCOM* again

3    underscores the claims' failure at *Alice*'s second step.  A recitation of the facts in *BASCOM* is

4    helpful here.  In *BASCOM*, the asserted patent was directed to filtering content on the Internet.

5    827 F.3d at 1348.  The patent claimed "the installation of a filtering tool at a specific location,

6    remote from the end-users, with customizable filtering features specific to each end user."  *Id.* at

7    1350.  The Federal Circuit found that the patent's claim limitations, when "taken individually,

8    recited generic computer, network and Internet components, none of which is inventive itself."  *Id.*

9    at 1349.  However, when viewed as a whole, the patent's claims "recite[d] a specific, discrete

10   implementation of the abstract idea of filtering content."  *Id.* at 1350.  While "[f]iltering content on

11   the Internet was already a known concept, . . . the patent describes how its particular arrangement

12   of elements is a technical improvement over prior art ways of filtering such content."  *Id.*

13   Concluding that the patent had recited a specific technical solution that added to the abstract idea,

14   the *BASCOM* court found an inventive concept "in the ordered combination of [its] claim

15   limitations that transform the abstract idea of filtering content into a particular, practical

16   application of that abstract idea."  *Id.* at 1352.

17           Plaintiff contends that claims 1 and 31 "recite an inventive and specific combination . . .

18   because they solve the problem of conventional systems that were *unable to accurately and*

19   *always* reporting [sic] the actual current status of each entity's accounts receivable and accounts

20   payables in a multi-entity organization accounting system."  Opp. at 21 (emphasis added).  Here,

21   the similarities and differences between the Asserted Patents and the patent of issue in *BASCOM*

22   show why the Asserted Patents fail at *Alice* step two.  Like the claim limitations of the patent in

23   *BASCOM*, when analyzed individually, the claim limitations of the Asserted Patents "recite

24   generic computer, network and Internet components, none of which is inventive by itself."  827

25   F.3d at 1349.  But unlike the *BASCOM* patent claims, the claim limitations of the Asserted

26   Patents, when considered in ordered combination, do not identify a "specific application[] or

27   improvement[] to technology."  *Id.* at 1350 (quotation omitted).  Claims 1 and 31 merely recite the

28   abstract idea of entering and analyzing financial transactions performed on a set of generic

United States District Court
Northern District of California

United States District Court
Northern District of California

1    computer components.  *See Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 958 (Fed. Cir.

2    2021), *cert. denied*, 142 S. Ct. 435 (2021) ("The claims do not incorporate anything more beyond

3    conventional computing hardware and software, which do not transform the subject matter into an

4    eligible application of the abstract idea.").  The fact that a computer can carry out the abstract idea

5    faster and more efficiently than a person can makes no difference.  *See id.* at 957 ("[C]laiming the

6    improved speed or efficiency inherent with applying the abstract idea on a computer is insufficient

7    to render the claims patent eligible." (internal quotation marks omitted)).  Such claims simply "do

8    not set forth an inventive concept that would transform their subject matter into something more

9    than the abstract idea."  *Id.* at 958.

10         Whether considered in isolation or as an ordered combination, neither Claim 1 or Claim

11   31, or their various recited elements, transforms the core abstract idea into patent-eligible subject

12   matter.  There is no inventive concept contained within the claims.  The Asserted Patents therefore

13   fail both prongs of the *Alice* test.[2]

14         **C.    Motion for Leave to Amend**

15         On October 22, 2021, Plaintiff filed a motion for leave to file a second amended complaint.

16   Dkt. No. 56.  The Court finds that motion appropriate for disposition without oral argument and

17   deems the motion submitted.  *See* Civil L.R. 7-1(b).

18         The Court concludes that no additional allegations can establish that the asserted claims are

19   directed to patent eligible subject matter.  The asserted claims set forth a "conventional process for

20   collecting and analyzing information via a mathematical process" and, on their own or as an

21   ordered combination, do not transform the instant invention into patentable subject matter.  *See*

22   *Brightedge Techs., Inc.*, 304 F. Supp. 3d at 872.  Moreover, dependent claims 2 and 7 of the '560

23

24   _____

25   [2] Plaintiff makes a perfunctory argument that claim construction is necessary before the Court can
     consider the issue of invalidity.  Opp. at 24.  But Plaintiff has not identified (either in its papers or
     in response to the Court's question at oral argument) a single disputed claim term, and has offered
26   no proposed construction that could change the Court's § 101 analysis.  In line with the Federal
     Circuit and several other courts in this district, the Court finds that this motion thus can be
27   resolved on the pleadings prior to claim construction on this record.  *See Content Extraction*, 776
     F.3d at 1349 (affirming grant of motion to dismiss prior to claim construction); *see also OpenTV,*
28   *Inc.*, 2015 WL 1535328, at *2 (collecting cases).

United States District Court
Northern District of California

1   Patent, which Plaintiff raises for the first time in its reply in support of its motion for leave (Dkt.

2   No. 64 at 13), are only variations on the abstract idea of the collection and organization of

3   financial data.  *See* '560 Patent, 49:30-37 (claim 2 disclosing that the method occurs before

4   payment is recorded); *id.* at 50:5-37 (claim 7 disclosing that each distinct company in the multi-

5   company accounting platform may be categorized by "segment").

6   　　　No well-pled factual allegations could possibly identify the claimed activity of electronic

7   financial recordkeeping as anything "more than [the] performance of well-understood, routine,

8   [and] conventional activities previously known to the industry."  *Aatrix*, 882 F.3d at 1128

9   (quotation omitted).  Accordingly, the Court DENIES Plaintiff's motion for leave to file a Second

10   Amended Complaint as futile.

11   **IV.　CONCLUSION**

12   　　　The Court **GRANTS** Defendant's motion to dismiss without leave to amend and **DENIES**

13   Plaintiff's motion for leave to file a Second Amended Complaint as futile.

14   　　　The Clerk is directed to enter judgment in accordance with this order in Defendant's favor

15   and close the case.

17   **IT IS SO ORDERED.**

18   Dated:  12/20/2021

19
20   HAYWOOD S. GILLIAM, JR.
United States District Judge

14